[Cite as *State v. Chislton*, 2023-Ohio-523.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                                   :

    Plaintiff-Appellee,                   :

                               No. 111464

    v.                                             :

DAVID B. CHISLTON,                               :

    Defendant-Appellant.                  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 23, 2023

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-17-616383-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey Schnatter, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defendant, *for appellant*.

ANITA LASTER MAYS, A.J.:

{¶ 1} Defendant-appellant David B. Chislton ("Chislton") appeals the trial court's decision denying his motion to vacate his guilty plea. Chislton asks this court

to vacate his guilty plea, prison sentence, and remand to the trial court to conduct a hearing on his postconviction motion to withdraw his plea.  We affirm.

## I.  Facts and Procedural History

{¶ 2}  Chislton previously filed an appeal in *State v. Chislton*, 8th Dist. Cuyahoga No. 108840, 2021-Ohio-697 ("*Chislton I*"), and the facts, adopted from *Chislton I*, are as follows:

> On April 27, 2017, Chislton was indicted for 83 offenses related to a fire he started at his apartment building in Warrensville Heights on April 10, 2017.  On January 10, 2019, at a hearing in open court ("the Plea Hearing"), Chislton entered guilty pleas to 14 of these counts, along with various specifications.  The court issued a journal entry on January 12, 2019, attempting to memorialize Chislton's plea.  However, certain aspects of this journal entry were inconsistent with what occurred at the Plea Hearing.  For example, the January 12, 2019 journal entry states that Chislton entered a guilty plea to Counts 6 and 68, when, in fact, he did not plead guilty to either of these two counts at the Plea Hearing.
>
> The state filed an unopposed "motion to correct the record" pursuant to Crim.R. 36 on February 12, 2019.  In that motion, the state explained that at the Plea Hearing, it had intended to amend Count 4 and dismiss Count 5 and requested that the court "issue a corrected journal entry dismissing count five and amending Count four."  The state's motion made no reference to the discrepancies between what occurred at the Plea Hearing and what the journal entry stated regarding Counts 6 and 68.
>
> The court granted the state's motion on February 15, 2019, and issued a nunc pro tunc order attempting to "correct the record."  This journal entry states, in part, that "the state amends Count 4 in the exact same way as Count 5 was amended. Count 4 is amended to felonious assault 2903.11(A)(1) * * *.  The state dismisses Count 5."
>
> On February 19, 2019, Chislton and his counsel were present in the court when the court sentenced Chislton to 47 years in prison as

follows: six years each on Counts 1, 4, 6, and 8 to run concurrent to one another; eight years on Count 10, plus four and one-half years for the firearm specification; ten years on Count 11; three years on Count 13, plus four and one-half years for the firearm specification; ten years each on Counts 18-22 to run concurrent to one another and to eight years on Count 68; and one year on Count 83. Unless noted otherwise, the court ordered Chislton's prison terms to run consecutively.

The February 19, 2019 sentencing order is not consistent with the Plea Hearing. For example, Chislton did not plead guilty to Counts 4, 6, or 68 at the Plea Hearing, despite the court imposing a sentence on each of these counts. He did plead guilty to other counts, such as Counts 3, 5, and 61, on which no sentence was imposed.

Chislton filed a notice of appeal on July 15, 2019. Sua sponte, this court dismissed the appeal on March 10, 2020, for lack of a final appealable order, finding the following:

> The sentencing entry and transcript of the plea and sentencing reflect a number of irregularities: 1) appellant plead guilty to count 5 but was not sentenced on that count (Tr. 85); 2) appellant did not plead guilty to count 4 but was sentenced on that count (Tr. 112); 3) appellant plead guilty to count 61 but was not sentenced on that count (Tr.93); 4) appellant did not plead guilty to count 68 but was sentenced on that count (Tr. 13); 5) appellant plead guilty to count 3 but was not sentenced on that count (Tr. 85); 6) appellant plead guilty to a notice of prior conviction related to count 6 but did not plead guilty to the base charge in count 6 (Tr. 86).

On July 20, 2020, the trial court issued a second nunc pro tunc entry that granted a joint motion to correct the record and stated in part as follows:

> The record is therefore hereby corrected at this time by agreement of the parties and pursuant to Criminal Rule 36 to reflect a plea to Count six, rather than Count three * * *.
>
> Motion by the state of Ohio to dismiss Count 61 without prejudice is hereby granted.

> The court's new sentencing journal entry will not reflect a sentence on Count 68.

On August 5, 2020, the trial court issued a journal entry, which purported to resentence Chislton as follows: six years in prison for Counts 1, 4, 6, and 8, to run concurrently; eight years in prison for Count 10; ten years in prison for Count 11; three years in prison for Count 13; ten years in prison for each of Counts 18-22, to run concurrently; one year in prison for Count 83; and nine years in prison for the merged firearm specifications. The court ran these prison terms consecutively, other than where noted.

Neither the July 20, 2020 nor the August 5, 2020 journal entry reflects what happened at the Plea Hearing. For example, as discussed, Chislton did not plead guilty in open court to Counts 4 or 6. Nevertheless, the August 5, 2020 journal entry states in part as follows: "On a former day of court the defendant plead [sic] guilty to felonious assault 2903.11(A)(1) [sic] F2 as charged in count(s) 4 of the indictment. On a former day of court the defendant plead [sic] guilty to felonious assault 2903.11(A)(1) F2 with notice of prior conviction specification(s) as charged in Count(s) 6 of the indictment." The August 5, 2020 journal entry goes on to sentence Chislton on Counts 4 and 6, in addition to sentencing Chislton on numerous other counts.

This court reinstated Chislton's appeal on August 17, 2020. The next day, August 18, 2020, this court sua sponte ordered Chislton to "show cause regarding the existence of a final appealable order in this case consistent with *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, *State v. Baker*, 2008-Ohio-3330, 119 Ohio St. 3d 197, 893 N.E.2d 163."

On December 30, 2020, this court issued another journal entry noting that the trial court's August 5, 2020 journal entry does not reflect what happened at the Plea Hearing and the February 19, 2019 sentencing hearing. This Court ordered the parties to address whether the trial court's August 5, 2020 journal entry amounts to plain error, and if so, the proper disposition of this case.

*Id.* at ¶ 2-12.

{¶ 3} In *Chislton I*, this court held that the trial court erred when it "attempted to modify Chislton's plea and sentence via journal entries outside of his presence." *Id.* at ¶ 25. We also stated that the trial court

> held neither a new plea hearing nor a new sentencing hearing and failed to make the Crim.R. 11(C) determinations or inform Chislton about his constitutional rights as it issued the judgment entries purporting to modify Chislton's pleas and impose sentence based on those modified pleas.

*Id.*

{¶ 4} The court in *Chislton I* remanded the case to the trial court "for the limited purpose of: a) holding a hearing at which defendant is present and imposing a sentence that comports with Chislton's plea of record from the January 10, 2019 Plea Hearing, or b) holding further proceedings consistent with this opinion." *Id.* at ¶ 27.

{¶ 5} Upon remand, on September 17, 2021, Chislton filed a motion requesting an order to withdraw his guilty pleas, vacate his plea agreement, and to schedule his case for trial. Chislton argued that his plea was not entered into knowingly, intelligently, or voluntarily. Chislton alleged in his attached affidavit that his trial counsel stated that he knew the judge and could get Chislton ten years in prison. However, Chislton admitted, in this affidavit, that his trial counsel did not promise a specific sentence, but rather it was an unofficial promise.

{¶ 6} On December 8, 2021, the trial court held a hearing regarding Chislton's motion and then denied Chislton's motion finding that there was no

reasonable and legitimate basis for his request to withdraw his plea and no evidence there was a manifest injustice.

{¶ 7} On February 28, 2022, in accordance with this court's remand, the trial court held a resentencing hearing and sentenced Chislton to 43 years in prison, which included: three years on Counts 1, 5, 8, 11, 18, 19, 20, 21, and 22; three years plus 54 months for firearm specifications on Counts 10 and 13; and one year on Count 83. The trial court also ordered that the sentences for the firearm specifications be served consecutively to each other and the other sentences for a total of nine years. The trial court sentenced Chislton to serve each sentence consecutively for an aggregate total of 43 years' imprisonment.

{¶ 8} In its journal entry, the trial court stated that

[t]he court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public, and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct.

Journal entry No. 122882673 (Apr. 20, 2022).

{¶ 9} Chislton filed this appeal assigning three errors for our review:

I. Upon remand to the trial court for the creation of a final appealable order, the trial court erred in denying appellant's motion to withdraw his guilty plea.

II. Appellant received ineffective assistance of counsel at the time of his plea hearing, in violation of his rights under the Fifth, Sixth, and Fourteenth amendments to the U.S. Constitution.

III. The trial court erred when it ordered consecutive sentences without support in the record for the requisite statutory findings under R.C. 2929.11, 2929.12, and 2929.14.

## II. Motion to Withdraw Guilty Plea

{¶ 10} In Chislton's first assignment of error, he argues that upon remand, the trial court erred in denying his motion to withdraw his guilty plea. Chislton argues that his motion should be considered a presentence motion to withdraw rather than a postsentence motion to withdraw. "'A presentence motion to withdraw a guilty plea should be freely and liberally granted.'" *State v. Barnes*, 2022-Ohio-4486, 2022 Ohio LEXIS 2559, ¶ 13 (Dec. 15, 2022), quoting *State v. Xie*, 62 Ohio St.3d 521, 527 N.E.2d 715 (1992). However, "[a] postsentence motion to withdraw a guilty plea is governed by the 'manifest injustice' standard." *State v. Rodriguez*, 8th Dist. Cuyahoga No. 103640, 2016-Ohio-5239, ¶ 22, citing Crim.R. 32.1. "A manifest injustice has been defined as a 'clear or openly unjust act,'" *id*., citing *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998), "meaning that a postsentence withdrawal motion to withdraw a guilty plea is allowable only in extraordinary cases." *Id*., citing *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977).

{¶ 11} Chislton argues that because the court in *Chislton I* remanded to the trial court for resentencing, his motion is a presentence motion versus a

postsentence motion. However, Chislton pleaded guilty and was sentenced by the trial court before his appeal. The court in *Chislton I* did not set aside his convictions, but rather remanded for the limited purpose of instructing the trial court to impose a sentence that was in agreement with Chislton's guilty plea. *Id.* at ¶ 27. The trial court had already sentenced Chislton for convictions, but incorrectly reflected the sentence in the journal entry.

{¶ 12} The state argues that the trial court lacked the jurisdiction to consider Chislton's motion to withdraw his guilty plea because "if 'this court remands a matter [solely] for resentencing, the trial court may not entertain a motion to withdraw a plea.'" *State v. O'Neal*, 9th Dist. Medina No. 10CA0140-M, 2012-Ohio-396 ¶ 8, quoting *State v. O'Neal,* 9th Dist. Medina No. 07CA0050-M, 2008-Ohio-1325, ¶ 11. *See also State v. Simon*, 12th Dist. Butler No. CA2015-05-081, 2015-Ohio-4448, ¶ 20 ("[O]n remand solely for resentencing, a trial court may not entertain a motion to withdraw a plea; a trial court's grant of a post-remand motion to withdraw a plea would essentially undo the entire appeal."); *State v. McGraw*, 8th Dist. Cuyahoga No. 110799, 2022-Ohio-1321, ¶ 7 ("Further, a trial court lacks authority to consider a motion to withdraw a guilty plea subsequent to an affirmance of an offender's convictions by an appellate court."); and *State v. Caston*, 6th Dist. Erie No. E-11-077, 2012-Ohio-5260.

{¶ 13} Because the court in *Chislton I* solely remanded the matter for resentencing, the trial court did not have jurisdiction to entertain Chislton's motion

to withdraw his guilty plea. Therefore, Chislton's first assignment of error is overruled.

## III. Ineffective Assistance of Counsel

{¶ 14} In Chislton's second assignment of error, he argues that he received ineffective assistance of counsel at the time of his plea hearing. In *Chislton I*, Chislton's first appeal to this court, he did not argue that he received ineffective assistance of counsel. "Further, res judicata bars claims of ineffective assistance of counsel that were based on facts in the record and were raised or could have been raised on a prior appeal." *State v. Westley*, 8th Dist. Cuyahoga No. 108847, 2020-Ohio-809, ¶ 11, citing *State v. Hodges*, 2017-Ohio-9025, 101 N.E.3d 1045, ¶ 15 (8th Dist.).

{¶ 15} Furthermore,

[u]nder the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial that resulted in that judgment of conviction or on an appeal from that judgment.

*State v. Price*, 8th Dist. Cuyahoga No. 103282, 2016-Ohio-711, ¶ 21, citing *State v. Segines*, 8th Dist. Cuyahoga No. 99789, 2013-Ohio-5259, ¶ 8, citing *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). "Thus, any issue that could have been raised on direct appeal and was not is res judicata and not subject to review

in subsequent proceedings." *Id.*, citing *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 16.

{¶ 16} In the instant matter, Chislton had an opportunity to raise the ineffective assistance of counsel issue in his direct appeal in *Chislton I*. He did not, and raised the issue for the first time at his motion hearing where he argued that his counsel was ineffective for misleading him to believe that he would get a shorter prison sentence. His claims are barred by res judicata.

{¶ 17} Therefore, Chislton's second assignment of error is overruled.

## IV.  Consecutive Sentences

{¶ 18} In Chislton's third assignment of error, he argues that the trial court erred when it ordered consecutive sentences without support in the record for the statutory findings. An appellant "can challenge consecutive sentences on appeal in two ways. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the necessary findings required by R.C. 2929.14(C)(4)." *State v. Williams*, 8th Dist. Cuyahoga No. 108904, 2020-Ohio-1622, ¶ 38, citing R.C. 2953.08(G)(2)(b); *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 16 (8th Dist.). "Second, the defendant can argue that the record does not support the court's findings made pursuant to R.C. 2929.14(C)(4)." *Id.*, citing R.C. 2953.08(G)(2)(a); *Nia* at *id*. Chislton argues the latter.

{¶ 19} "R.C. 2953.08(G)(2) provides that when reviewing felony sentences, a reviewing court may overturn the imposition of consecutive sentences where the

court 'clearly and convincingly' finds that (1) 'the record does not support the sentencing court's findings under R.C. 2929.14(C)(4),' or (2) 'the sentence is otherwise contrary to law.'" *State v. Saxon*, 8th Dist. Cuyahoga No. 111493, 2023-Ohio-306, ¶ 18.

> Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 20} In *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607, ¶ 18-23, the Ohio Supreme Court clarified how consecutive sentences should be reviewed and held that "consecutive-sentence findings are not simply threshold findings that, once made, permit any amount of consecutively stacked individual sentences." The court also held that "appellate review of consecutive sentences under R.C. 2953.08(G)(2) does not require appellate courts to defer to the sentencing court's findings in any manner." *Id.* at ¶ 23.

{¶ 21} The court in *Gwynne* explained:

[T]he appellate standard of review under R.C. 2953.08(G)(2) is not whether the trial court abused its discretion when it imposed consecutive sentences and intermediate deference to the trial court's findings is not required. An appellate court's review of the record and findings is de novo with the ultimate inquiry being whether it clearly

and convincingly finds — in other words, has a firm conviction or belief — that the evidence in the record does not support the consecutive-sentence findings that the trial court made. To reiterate, R.C. 2953.08(G)(2)'s clear-and-convincing standard does not permit —much less require or expect — an appellate court to modify or vacate an order of consecutive sentences only when it is unequivocally certain that the record does not support the findings. It requires that the appellate court vacate or modify the order if, upon review of the record, the court is left with a firm belief or conviction that the findings are not supported by the evidence.

When reviewing the record under the clear-and-convincing standard, the first core requirement is that there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made. If after reviewing the applicable aspects of the record and what, if any, evidence it contains, the appellate court finds that there is no evidence in the record to support the consecutive sentence findings, then the appellate court must reverse the order of consecutive sentences. A record that is devoid of evidence simply cannot support the findings required by R.C. 2929.14(C)(4); there must be an evidentiary basis upon which these findings rest.

The second requirement is that whatever evidentiary basis there is, that it be adequate to fully support the trial court's consecutive-sentence findings. This requires the appellate court to focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings. An appellate court may not, for example, presume that because the record contains some evidence relevant to and not inconsistent with the consecutive-sentence findings, that this evidence is enough to fully support the findings. As stated above, R.C. 2953.08(G)(2) explicitly rejects this type of deference to a trial court's consecutive-sentence findings. Instead, a de novo standard of review applies to whether the evidence in the record supports the findings that were made. Under this standard, the appellate court is, in fact, authorized to substitute its judgment for the trial court's judgment if the appellate court has a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences, which includes the number of consecutive terms and the aggregate sentence that results.

*Gwynne* at ¶ 27-29.

{¶ 22} Under Ohio law, sentences are presumed to run concurrently unless the trial court makes the required findings under R.C. 2929.14(C)(4). *State v. Reindl*, 8th Dist. Cuyahoga Nos. 109806, 109807, and 109808, 2021-Ohio-2586, ¶ 14; *State v. Gohagan*, 8th Dist. Cuyahoga No. 107948, 2019-Ohio-4070, ¶ 28. To impose consecutive sentences, the trial court must find that (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and (3) at least one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 23} At the sentencing hearing, the trial court stated:

So I just want to say that I've probably not spent as much time on any case as I have never had a resentencing like this before. And one of the things that I was concerned about was just making sure that I understood the original circumstances that surrounded this case and knowing of course that the case itself happened quite a few years ago. And so that's something that I wanted to familiarize myself with.

I want to note that the defendant has an extensive criminal history which includes violence against family members, and I will go over that in just a few minutes.

But I want to say that this resulted in quite the series of events which turned into just a mess, right? There was the sexual assault of the defendant's stepdaughter under the circumstances here as outlined in both the presentence investigation and in the reflective notes of the entirety of the file, but then there's the felonious assault and the beating of the defendant's wife at the time. Then there's a standoff with the police and the SWAT threats, and then there's the burning down of one of the apartment complexes, Banbury, which created a massive fire and massive damage. And so that's a lot of things. There were a dozen families that were displaced from the arson which burned down a huge building.

So the sexual assault of the defendant's stepdaughter is by far the most deeply concerning element to this, and I want you to know that I'm very proud of you for coming into court today and that you are very brave, and the fact that you were able to disclose this information to your mom and to move forward is something that is not lost on me. I'm very proud of you for being here today because many people would not be.

Aside from that, this is a series of events that's just a nightmare and, unfortunately, I think if the defendant had maintained medication or mental health compliance or anything during the course of that time frame, that he probably would have been able to change at least some of the course of his actions but certainly, you know, we can't go back in time now.

Mr. Chislton, I want you to know that I mostly do mental health docket so most of the people who are here on my docket have mental health issues. Not all of them however commit violent acts against their

wives, their stepdaughters and burn down apartment buildings. So there is something different that's going on outside of perhaps just schizoaffective disorder. There is something inside of you that you really need to take a look at, and you need to recognize that it's incredibly dangerous the course of actions that you went through. And in fact, it's literally one of the most dangerous courses of crimes that I have encountered, and I've encountered a lot of violent crimes. So that's something to be concerned about, and that's something that deeply concerns this court.

After reviewing the defendant's presentence investigation, I want to note for the record that the defendant has a rather extensive criminal history which includes felonious assault with firearm specifications, domestic violence, intimidation of crime witnesses. And that includes — that occurred in 2009 for which the defendant was on postrelease control.

(Tr. 83-86.)

{¶ 24} After the trial court considered all of the required factors under R.C. 2929.11, 2929.12, and 2929.13, it sentenced Chislton to consecutive sentences.

(Tr. 88.) The trial court stated:

I am going to run the counts consecutively to each other and consecutive of course to the firearm specifications. I impose prison terms consecutively finding that consecutive services of the prison terms is necessary to both protect the public from future crime and to punish this defendant. The consecutive sentences are not disproportionate to the seriousness of this defendant's conduct and to the danger that this defendant poses to the public, and that at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offense committed is part of any other courses of conduct adequately reflect the seriousness of this defendant's conduct.

(Tr. 88-89.)

{¶ 25} After a review of the record, we determine that the trial court complied with the necessary statutory findings to impose consecutive sentences. "'[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld.'" *State v. Hervey*, 8th Dist. Cuyahoga No. 110775, 2022-Ohio-1498, ¶ 19, quoting *State v. Bonnell*, 140 Ohio St.3d 209, 16 N.E.3d 659, 2014-Ohio-3177, ¶ 29. "When considering whether the trial court has made the requisite findings, we must view the trial court's statements on the record 'in their entirety.'" *Id. See, e.g., State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 74; *State v. Aquilar*, 8th Dist. Cuyahoga No. 109283, 2021-Ohio-841, ¶ 22; *State v. Blevins*, 2017-Ohio-4444, 93 N.E.3d 246, ¶ 21, 23 (8th Dist.).

{¶ 26} Chislton further argues that the trial court disregarded the significance of his mitigation report and mental health issues. The record reflects that the trial court considered both the report and Chislton's mental health. (Tr. 85.) Chislton also argues that the trial court did not find that consecutive sentences are not disproportionate to the seriousness of this defendant's conduct and to the danger that this defendant poses to the public. However, according to the record, the trial court did make that finding. (Tr. 89.)

{¶ 27} Therefore, Chislton's third assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
MICHAEL JOHN RYAN, J., CONCUR